## FLANAGAN & ADAMS v. ALSON H. POST.[*]

### [ IN CHANCERY. ]

### Rights of Co-sureties.

Where several sign a promissory note, and one of them is the real principal, the others, *inter sese*, are, *prima facie*, sureties of the principal, and co-sureties of each other, and the burden of proof is on the party alleging the contrary.

A security from a principal to one surety, enures, by operation of law, equally to the benefit of a co-surety.

If a principal procure one to sign a note with him as surety, upon the representation that the money raised thereon shall be paid upon debts where the surety is already holden for him, a co-surety is not affected by such representation when the money thus raised is paid on a debt where he is sole surety for the principal, unless he had knowledge of such representation.

M., as principal, and A., F., and P., as sureties, executed a promissory note to raise money to pay a note on which P. was sole surety of M., and the note was delivered to P. to get discounted. P., before getting the note discounted, and on the faith of it, paid the debt on which he was sole surety, out of his own funds. *Held,* that P. was not then bound to cancel the note, or surrender it to his co-sureties.

* This case was decided at the January term, 1865.

APPEAL from the court of chancery. The bill alleged that, prior to the 10th day of November, 1860, the orators had severally become the sureties of one Mills upon divers promissory notes then outstanding; that one Alson H. Post was also liable at the same time, as sole surety for Mills, on a note for $800, then over due and in the Commercial Bank, in Burlington; that Mills, before and at the date aforesaid, was, and ever since has been, wholly insolvent, and that the orators never had any security for their several liabilities as such sureties, nor any part thereof; that on or about the 10th day of November aforesaid, and while the orators and Post were so liable for Mills, the orator, Flanagan, at the solicitation and request of Post, as his surety, and relying wholly on him for protection and indemnity, executed and delivered to Post a promissory note for $800, payable to one Carney Buttles, or bearer, on the first day of November, 1861, with interest,—Post, at the time of the execution of said note, representing to Flanagan, that he, the said Post, desired. and intended to use said note for the purpose of raising money with which to pay the note for $800 at the Commercial Bank, and that he, the said Post, would, as principal, execute the note so payable to the said Buttles; that soon after the last mentioned note was executed, it was taken to the orator, Adams, by Mills, who then stated to Adams, that he, Mills,.or Post, had ascertained that money could be obtained of the said Buttles, and he, Mills, desired Adams to sign said note as surety, representing to Adams that Post would also sign the said note as co-surety, and that the money obtained on said note should be used in the payment only of those claims on which Adams was liable as Mills' surety, so that Adams' liabilities for Mills should not be increased by the execution by Adams of said last mentioned note; and thereupon Adams, relying wholly upon the statements of Mills, signed said note, and handed it to Mills, who, soon afterwards, procured Post to sign it (Mills also having signed it himself), and left it with Post; that about a month afterwards, and on or about the 10th day of December, 1860, the said last named note still being in the hands of Post, Mills, by and through the deceitful and fraudulent procurement of Post, applied to the ora-

tors, separately, to sign another note of like amount and tenor, at the same time representing to them that Post would also sign it, and that Post desired them to do so, and that the sole object in obtaining another note, was to save about a month's interest which had already accrued on the first note, and that if they would sign the note last presented, it should be used only as a substitute for the first note so signed by them; that the orators, relying wholly upon these representations and assurances of the said Mills, and fully understanding and believing that the new note was to take the place of the former one, and that their relations to each other, and to Post and Mills, would not be thereby affected, severally executed said new note and delivered the same to Mills.

The bill further alleged, that at the time of the execution by the orators of said last mentioned note, Post did not intend to execute the same, nor that the same should stand in place of, and as a substitute for, the first note; but in procuring Mills to obtain the orators' signatures to the second note, Post fraudulently and corruptly intended to obtain possession of the same, to hold it as security for his liability for Mills, and to compel the orators to pay the whole amount thereof to him; and that he, having received said note as aforesaid, soon afterwards, fraudulently and corruptly offered to sell and negotiate it to one Philander Bradley, with only the names of Mills and the orators subscribed thereto, and endeavored, unsuccessfully, to persuade Bradley to purchase said note without the defendant's name upon it, or with his name endorsed upon the back thereof as endorser or guarantor only, and not as co-maker or co-surety with the orators, and now fraudulently and corruptly refuses to sign or execute said note, and claims to hold the same as collateral security for his, the said Post's, claims against Mills, and threatens to enforce the collection thereof against the orators when the same shall become due.

The bill prayed that Post might be perpetually enjoined from negotiating or transferring the said note secondly executed by the orators as aforesaid, and from commencing or prosecuting any action thereon, or taking any steps whatever for the collection thereof from the orators; and that the said note might be

ordered and decreed to be surrendered and given up to the ora-
tors, or that Post might be ordered and compelled to hold and
use the same only in the manner and for the purposes, and subject
to all the duties and liabilities to which he was subject in respect
to the first note so executed by the orators, and payable to the
said Buttles.

The defendant in his answer, admitted· that in the fall of 1860;
he was surety for said Mills at the Commercial Bank, on a note
for $800, and that said note was overdue, as stated in said bill;
and alleged, that at the time the first note to Buttles was exe-
cuted, the said Mills, though actually insolvent, as the defendant
now believes, was ·still doing business at Hinesburgh, and had
not, to the knowledge of the defendant, been attached, or other-
wise molested, and had property of various kinds in his posses-
sion, or ownership; and denied that the orator, Flanagan, ever
signed, or delivered· to the defendant, any note for $800, or any
other sum, at the defendant's request, or upon the defendant's in-
demnity, or obligation in any form to see the said Flanagan
harmless in respect thereto, and denied that any note was ever
substituted for any such note, and denied all knowledge of what
transpired between said Mills and the orator, Adams, as to any
such note, or any note, as stated in said bill; and alleged that
at or about the time of the date of the note first executed to
Buttles as aforesaid, the note of said Mills for $800, signed by
the defendant as surety, lay in said bank overdue, and in order
to arrange the same, it was mutually agreed between said Mills
and the defendant, that Mills should make a note for that sum,
on one year, to said Buttles, from whom the defendant expected
to raise money, and procure the orators to sign it as sureties,
and deliver it to the defendant for his own use, and the defend-
ant agreed, in such event, to arrange, settle up, and pay the
said bank note, and also to sign said Buttles' note himself, as co-
surety with the orators; that thereupon said first Buttles note
was so procured by Mills, and delivered to the defendant in pur-
suance of said agreement, and that the defendant had, in the
meantime, arranged and agreed with said Buttles for $800, to be
raised on such note; that the defendant received said note upon
33

the express consideration of his assuming the burden of taking up said bank note, and in perfect good faith, and without any such agreement, terms, or understanding, as is stated in said bill ; that the defendant did this in lieu of taking other security from said Mills, as he then might, and would have done in respect to said bank note ; that before the defendant could actually get the money, or its equivalent, on said note from said Buttles, though said Buttles had agreed to let him have it, some little time elapsed, the defendant holding said note under the agreement aforesaid, and therefore, afterwards, and about the 15th or 20th of December, 1861, as a mere matter of accommodation to said Mills, to give him a longer time for payment, and as a substitute for said first note, the defendant received from said Mills another note for $800, signed by the said Mills and the orators, payable to said Buttles, in one year, and this last note was given and received upon the same terms and agreements, above stated as to said first note, and in good faith, and in the belief by the defendant that he had a right to do so ; and that the defendant so received said second note in lieu of said first note, and immediately, on the faith thereof, omitting to take or obtain other security from said Mills, which he otherwise would have done, did pay and take up said bank note, and did thereupon sign his own name to said last named note as co-surety with the orators, according to said previous agreement and understanding with said Mills ; and that the defendant, pursuant to said agreement with said Buttles in the premises, did sell and transfer to said Buttles said last named note, and received the full value and amount thereof from said Buttles before the commencement of this suit ; and denied that he ever, fraudulently, or otherwise, attempted to negotiate said second note to said Bradley, or that he refused to execute said note ; and alleged that prior to the commencement of this suit, he signed said note and parted therewith according to the original agreement aforesaid.

The answer was traversed, and the case was heard on bill, answer, traverse, and testimony, at the April term, 1864, PIERPOINT, Chancellor, and a decree entered dismissing the bill with costs ; from which decree the orators appealed.

*E. R. Hard* and *Ballard*, for the orators.

*George F. Edmunds* and *Nahum Peck*, for the defendant.

The opinion of the court was delivered by

PECK, J.    The case stands upon bill, answer, traverse, and testimony.   By reference to the bill and answer, it will be seen that the facts in dispute, and on which the relative rights of the parties depend, are few.   It appears that at the time the promissory note in question was executed, the orators were severally sureties for one Mills, and that Mills has since failed, without fully indemnifying the orators, and that the defendant, Post, was at the same time surety for Mills upon an $800 note to the Commercial Bank, then overdue.   There is no dispute but that the second note, the one in question, was signed with the understanding that it was a substitute for the first, which was never used, but given up to Flanagan soon after the second note was executed and delivered to Post ; so that the principal question of fact in dispute affecting the ultimate rights of the parties, is, whether Post agreed to sign the note as principal, as between him and the orators, or either of them, or merely as surety for Mills, and co-surety with the orators.   It is agreed on all hands, that Mills is the real principal, and the one who ought to pay the note.   The bill alleges that Post procured the orator, Flanagan, to sign the note as his surety, representing that he wanted to use it to raise ·money to pay the $800 note at the Commercial Bank, on which he, Post, was surety for Mills.   It appears from the testimony, that Mills applied to, and procured the orators to sign the note, and that so far as Mills, Flanagan, and Post were concerned, it was understood that the note was to be used to procure money of Buttles, to pay the $800 note to the Commercial Bank, on which Post was the sole surety for Mills.   *Prima facie*, therefore, Post, by signing the note in question, would stand as surety for Mills, and co-surety with the orators.   This result follows from the relation of the parties. The burden is therefore upon the orators to show some agreement on the part of Post, by which he assumed the relation of principal to the orators, or one of them at least.   Without going into

details of the evidence, it is sufficient to say that we all agree that the proof does not show any agreement or mutual understanding that Post should stand as to either of the orators, as principal, or that he should indemnify either of them against the note ; but, on the contrary, we find that his agreement was that he should sign the note as co-surety with the orators. Post was to take the note and sign it as co-surety, and pay the Commercial Bank note, and obtain the money of Buttles upon the note in question for his indemnity for so doing. The testimony on this point is somewhat conflicting, but taking the defendant's answer and the evidence in the case, the balance of proof is with the defendant. It appears that at that time, all the parties regarded the responsibility of Mills as doubtful, and it is with some force urged on the part of the orators, that it is not probable that the orators would have signed the note, had they supposed they were increasing their liability for Mills without any indemnity. But, on the other hand, it appears that Mills was going along with his usual business, and, as he then represented, was about entering upon a job, out of which he expected to realize something to pay upon the debts upon which the orators were already liable for him ; that he had some property, sufficient to secure a considerable portion of the defendant's liability for him ; that the defendant had applied to him for security, and he proposed to turn out his property to the defendant, but finally, learning that the money could be obtained of Buttles on a good note, proposed to get the orators to sign the note, as already stated, and which the defendant agreed to take. Under these circumstances, it is as probable that the orators would sign the note as co-surety with the defendant, as that the defendant would forbear to take the proffered security on the property, and take the note in question, payable in a year, agreeing to indemnify the orators against it, and thus put it out of his power to secure himself until the note should become payable. The orators may have thought it more for their interest to increase their liability to the amount of two thirds of the note, than to have the defendant secure himself on the property of Mills, and break up his business. If so, the event shows that they may not have misjudged, as Mills afterwards paid $700 on the orator's li-

abilities, and turned out to Flanagan some of the property on which the defendant might have secured himself, and mortgaged another portion of it to Meech, to secure a note on which Adams was co-surety with Meech for Mills. This mortgage would enure to the benefit of Adams equally with Meech; as a security from the principal to one surety, enures by operation of law equally to the benefit of his co-surety. The orator, Flanagan, cannot complain of any wrongful use of the note or its avails, as it appears that before this suit was commenced, the defendant paid the Commercial Bank note, and passed the note to Buttles, the payee, for its amount in money; so that that the note, with its proceeds, has been used for the purpose for which the bill alleges, and the proof shows, it was executed.

The orator, Adams, cannot say that he signed the note on the faith that the defendant was to stand as principal as to him upon the note, as the bill alleges that the note in question was executed as a substitute for the first note, and that when Mills procured Adams' signature to the first note, he represented to him that the defendant would sign it *as co-surety;* and Adams' testimony is to the same effect, although not so explicit as the allegation in the bill.

The bill alleges that Mills, when he procured Adams to sign the note, represented to him that the avails of it should be used in payment of Adams' existing liabilities for Mills. This furnishes no ground of relief, as there is no allegation in the bill, and no proof, that the defendant had any knowledge that any such representation was made; and without such knowledge, the defendant cannot be affected by it, even if the representation was made as alleged. The testimony of Adams and of Mills is in conflict on this point, and leaves it in doubt whether any such representation was made, and it is not material which is correct.

As to the allegation in the bill, that the defendant, after he received the note, offered to sell it without signing it, and refused to sign it, we do not find it sustained by proof. The alleged offer to sell the note to Bradley without signing it, appears to have been nothing more than a casual conversation in relation to giving Bradley fifty or one hundred dollars to take his place and clear him from his liability for Mills, and not an offer to sell the note

as a valid note to the full amount against the orators, unaffected by the defendant's agreement to sign it as co-surety with them. But if he did offer to sell it without signing it, and endeavor to get Buttles to take it without his signature, still, it appears that before this suit was commenced, he signed the note, and passed it to Buttles and received the consideration for it; so that the orators have not been injured by any such purpose or attempt. If the orators had such reason to apprehend that a wrongful use was about to be made of the note to their prejudice, as to warrant the bringing of the bill, they should have abandoned it when the answer came in, admitting that the defendant agreed to sign, and had signed, the note as co-surety with them, and used it in the manner the proof shows it was agreed it should be used.

The allegation in the bill, that the orators, on the 11th January, 1861, demanded of the defendant to sign the note as principal, and use it according to the understanding or agreement, or to cancel or surrender it, cannot avail the orators as a ground of relief. The defendant was not bound to sign it as principal, for that was not the agreement. He was not bound to cancel or surrender it, as he had then, out of his own funds, on the faith of it, paid the $800 note to the Commercial Bank; not having been able to obtain the money of Buttles as soon as he expected, or as soon as Buttles had promised he should have it. It is doubtful whether, at any time after the note was delivered to the defendant, the orators could have recalled it. But if they might have recalled it immediately after it was delivered to the defendant, and before he had advanced any thing upon the faith of it, or lost any security by relying upon it, which otherwise he might have obtained, it is very clear that the defendant, having thus advanced money upon the faith of the note, and forborne to obtain other security, the rights of the parties had become fixed.

The result is, that the defendant, and the orators severally, are co-sureties upon the note in question, and bound equally to contribute to the payment of it, and that the defendant has been guilty of no such wrongful act in relation to the note, as will sustain the orator's bill. Decree of the court of chancery dismissing the bill with costs, is affirmed, and case remanded.